UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MUNJE BETTY FOH                                )
1545 N FAULKLAND LN APT 224                     )
SILVER SPRING, MD 20910                         )
                                                )
                Plaintiff,                      )
                                                )
        v.                                      )
                                                )
MARGARET M. CHASE, MICHAEL C. TALIERCIO         )
ROSSABI BLACK SLAUGHTER PA                      )
ATTORNEYS AT LAW, OAKBROOKE                     )
PROPERTY OWNERS ASSOCIATION, INC.               )
                                                )
                Defendants,                     )
Serve:                                          )
                                                )
                                                )
MARGARET M. CHASE                               )
2306 LAFAYETTE AVENUE                           )
GREENSBORO, NC 27408-5512                       )
                                                )
MICHAEL C. TALIERCIO                            )
2331 HIAWATHA DRIVE                             )
GREENSBORO, NORTH CAROLINA 27408-6915           )
                                                )
KEITH T. BLACK                                  )
ROSSABI BLACK SLAUGHTER, PA                     )
ATTORNEYS AT LAW                                )
POST OFFICE BOX 41027                           )
GREENSBORO, NORTH CAROLINA 27404-1027           )
                                                )
                                                )
JOHN T. HOLLOWAY                                )
OAKBROOKE PROPERTY OWNERS ASSOCIATION, INC.     )
C/O SUPERIOR ASSOCIATION MANAGEMENT LLC         )
PO BOX 2427                                     )
HUNTERSVILLE, NC 28070                          )
                                                )
                Defendants.                     )



FILED
NOV – 5 2014
IN THIS OFFICE
Clerk U.S. District Court
Greensboro, NC
By ____

1

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Munje Foh, *pro se* and hereby brings this civil action pursuant to the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. §§ 1692(a) (2013) et seq., the North Carolina Debt Collection Practices Act ("NCDCA") N.C. Gen. Stat. Article 2 §§ 75-50 (2013) et.seq. and U.S. Const. amend. XIV, § 1.

## JURISDICTION AND VENUE

1. Jurisdiction is based upon 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction) as the FDCPA claims present questions of federal law and the NCDCA claims are so related to [the FDCPA] claims "that they form part of the same case or controversy."

2. The Fair Debt Collection Practices Act was enacted to eliminate abusive, deceptive and unfair debt collection practices by debt collectors. Abusive, deceptive and unfair debt collection practices include but are not limited to continuing to communicate with a consumer after the debt collector knows that the consumer is represented by an attorney and can reasonably ascertain the attorney's name and address, failure to send written notice and validation of the debt within five days of the initial contact with the consumer and using false, deceptive, or misleading representation or means in connection with the collection of any debt. Pursuant to 15 U.S.C. § 1692(k)(d) a plaintiff may bring an action to enforce liability created under this subchapter in any appropriate United States district court without regard to the amount in controversy within one year from the date on which the violation occurs.

2

3. The North Carolina Debt Collection Act protects North Carolina consumers from unfair or deceptive acts or practices in or affecting commerce, where commerce includes all business activities but does not include professional services rendered by a member of a learned profession. N.C. Gen. Stat. § 75-1.1 (2013). Unfair or deceptive acts include but are not limited to misrepresenting the amount or legal status of the debt in question and failing to notify the consumer that a communication is being made for the purpose of debt collection.

4. Venue for this action is appropriate in the middle district of North Carolina as the majority of the Defendants are located in this district.

## PARTIES

5. Munje B. Foh ("Foh" or "Plaintiff") is a thirty-two year old United States citizen and resident of Maryland. Plaintiff provided purchase money for the construction of her home at 6007 Twin Brook Dr. Charlotte, NC 28269 in February 2005 and closed on the home in June 2005. Plaintiff has continuously owned the home since June 2005 and received a warranty deed stating that it was subject to "no restrictions" at closing. Plaintiff relocated from the home to 209 State St. in Raleigh, North Carolina in February 2011, but Plaintiff's family remained in the home until March 2012. Plaintiff rented the home to a tenant, Janeen Swaggard in April 2012 and relocated from Raleigh, NC to 409 Garrett A Morgan Blvd. Landover MD 20785 in May 2012. Plaintiff currently resides at 1545 Faulkland Ln. Apt 224, Silver Spring, Maryland 20910.

6. Defendant, Margaret Chase is an attorney formerly associated with Rossabi, Black Slaughter, PA and now associated with Higgins Benjamin Attorneys at Law. Ms. Chase

was originally retained to represent Oakbrooke Property Owners Association in a civil action to collect past due regular assessments from Plaintiff, Munje Foh. A significant portion of Ms. Chase's practice at Rossabi Black Slaughter, PA involved debt collection. Ms. Chase resides in the middle district of North Carolina. Ms. Chases practices law and regularly engages in debt collection activity on behalf of clients.

7. Defendant, Michael C. Taliercio is an attorney associated with Rossabi Black Slaughter, PA. Mr. Taliercio replaced Margaret Chase as the attorney for Oakbrooke Property Owner's Association once Margaret Chase left Rossabi Black Slaughter, PA and joined Higgins Benjamin Attorneys at Law. A significant portion of Mr. Taliercio's practice at Rossabi Black Slaughter, PA involves debt collection. Mr. Taliercio resides in the middle district of North Carolina. Mr. Taliercio practices law and regularly engages in debt collection activity on behalf of clients.

8. Defendant, Rossabi Black Slaughter, PA is a law firm that regularly engages in debt collection of behalf of clients. Its principle office and registered agent are located in Greensboro, NC, which lies within the middle district of North Carolina.

9. Defendant Oakbrooke Property Owner's Association, Inc., ("Oakbrooke") is a homeowners association incorporated as a non-profit corporation with the State of North Carolina since 2002. Within its "Declaration of Covenants, Conditions and Restrictions for Oakbrooke Subdivision", Oakbrooke states that it "wishes to insure the attractiveness of the individual Home Sites and common facilities within Oakbrooke Subdivision and to prevent any future impairment thereof; to prevent nuisances; to preserve, protect and enhance the values and amenities of the property and to provide for the maintenance and upkeep of the Common Areas, Common Open Spaces, Landscape and Easement Areas,

4

entrances, landscaping of community facilities and utilities located within OakBrooke Subdivision..." To that alleged end, Oakbrooke engages in debt collection from consumers living within the Oakbrooke subdivision of Charlotte, North Carolina, which is located near the intersection of Old Statesville road and WT Harris boulevard close to the intersection of interstates eighty-five (85) and (77). *Please See Oakbrooke's Covenants and Restrictions attached as "Exhibit A."*

## FOH FDCPA COMPLAINTS

10. Plaintiff's FDCPA complaints are based on Defendant Rossabi Black Slaughter, PA, Margaret Chase and Michael Taliercio's continuous written communication with her after she had retained an attorney, when the attorney's name and address were reasonably ascertainable and the attorney was in contact with Defendants, Defendant's misrepresentation of the legal status of the property at 6007 Twin Brook Dr., Charlotte, NC 28269 in attempt to coerce payment from Plaintiff and Defendant's misrepresentation of the legal status and amount of the debt.

## FOH NCDCA COMPLAINTS

11. Plaintiff's NCDCA complaints are based on Defendant Oakbrooke Property Owners Association, Inc.'s misrepresentation of the legal status and amount of the alleged debt to the Mecklenburg County Superior Court Clerk, Oakbrooke's false and deceptive statement to the Clerk regarding its knowledge of Plaintiff's residence and Oakbrooke's failure to notify Plaintiff that communications were made for the purpose of debt collection.

## FACTS COMMON TO ALL COUNTS

12. Plaintiff closed on her home at 6007 Twin Brook Drive, Charlotte, NC 28269 in June of 2005 and has maintained continuous ownership of the home since that time. *Please See Builder's Contract and General Warranty Deed attached as "Exhibit B."*

13. Upon information and belief, at the time that Plaintiff closed on her home, Oakbrooke Property Owners Association did not have a functioning executive board or board of directors according to its bylaws to collect association dues or monitor enforcement of any its covenants and restrictions.

14. On or about the summer of 2007 Plaintiff received mailed notice of homeowners association regular assessments due, however, after writing to the association and informing them that Plaintiff had purchased her home either prior to their existence or prior to the existence of assessment fees, Plaintiff received correspondence from Oakbrooke acknowledging receipt of her communication and saying that her balance had been cancelled.

15. In February 2011, Plaintiff relocated to 209 State St. in Raleigh, North Carolina for work while Plaintiff's mother and other family members remained in the home at 6007 Twin Brook Drive. In February 2012, Plaintiff hired MW Properties to find a renter for her home and manage the property as Plaintiff's mother relocated to West Africa in March 2012. *Please See Statement from MW Properties attached as "Exhibit C."*

6

16. Mario French, Vice President of Oakbrooke Property Owners Association, lives just adjacent to Plaintiff's property at 6007 Twin Brook and his front door is less than 100 feet from Plaintiff's front door, with both driveways situated in plain view of each other. *Please See Demonstrative Neighborhood Map attached as "Exhibit D."*

17. Plaintiff moved all of her family's belongings out of 6007 Twin Brook in March 2012 in preparation for tenants to move into the property in April 2012. Upon observing Plaintiff load the moving trucks, Mr. French approached Plaintiff and asked where she was moving to and whether she would be renting the home. Plaintiff answered that she was moving to Raleigh and that she had rented the home through MW Properties, a property management company who also managed the property at 5945 Twin Brook Dr. Mr. French asked to have Plaintiff's phone number in the event of an emergency or just to keep Plaintiff informed of occurrences at her home. Plaintiff provided her personal cell phone number. Mr. French never asked Plaintiff to provide her mailing address. *Please See Uhaul Rental Receipt attached as "Exhibit E."*

18. On or about May 24, 2012, Plaintiff moved from 209 State Street in Raleigh to 409 Garrett A Morgan Blvd in Landover, Maryland 20785. *Please See Uhaul Rental Receipt attached as "Exhibit F."*

19. During the summer of 2013 Mr. French called Plaintiff at least twice to inform her of complaints that he had regarding Plaintiff's tenants. Specifically, Mr. French complained that tenant's children had been involved in a late night fight outside of Plaintiff's property and that Mr. French personally witnessed the children assaulting a person on Plaintiff's property. Plaintiff received the complaints and relayed them to both the tenant and MW

7

Properties. Because of the seriousness of the complaints, Plaintiff instructed Mr. French to report them directly to MW Properties so that they could investigate. Plaintiff provided Mr. French with the contact telephone number for MW Properties.

20. In or about May 2013, Mr. French called Plaintiff and informed Plaintiff that Oakbrooke had assigned someone to collect fees for the association and that he had given the assignee Plaintiff's telephone number. Plaintiff informed Mr. French that she still held the same belief that she asserted years prior about not owing the fees but that she had not heard from anyone regarding Oakbrooke's association dues. Mr. French asked Plaintiff if she still resided in Raleigh and Plaintiff informed Mr. French that she had now relocated to Maryland.

21. On or about November 29, 2013, Plaintiff called Mr. French after receiving a voicemail message from him stating that he wanted to make sure that she knew that her home was in foreclosure. Plaintiff informed Mr. French that she had received no notice of a lawsuit and asked that he stop harassing her regarding payment of the homeowner's association fees. Plaintiff told Mr. French that she did not believe his claims of a lawsuit because she had received no written notice. Mr. French insisted that the Sheriff had been to Plaintiff's property to post notice because she could not be found otherwise and that he was only calling to help Plaintiff because he has seen lots of neighbors lose their homes and did not want her to be next. Mr. French gave Plaintiff the phone number for the POA's attorney; Margaret Chase at Rossabi, Black & Slaughter.

22. As of the date of Plaintiff's telephone conversation with Mr. French on November 29, 2014, Plaintiff had received no written notice of a lawsuit.

23. Plaintiff filed taxes with the State of North Carolina in 2012 and 2013 tax years and the address listed on both returns in 409 Garrett A Morgan Blvd., Landover, MD 20785. Therefore the addresses at 6007 Twin Brook Dr and 209 State St were not Plaintiff's last known addresses at the time of service. Additionally, the taxes on Plaintiff's property at 6007 Twin Brook are escrowed into Plaintiff's mortgage payments and at the time that Defendants served notice by posting, Plaintiff had received mortgage statements at 409 Garrett A Morgan Blvd for more than one year. *Please See Tax and Mortgage Statements attached as "Exhibit G."*

24. On December 2, 2013, the next business day, Plaintiff called the Mecklenburg County Clerk of court to verify the information that Mr. French had provided during their November 29, 2013 phone conversation. The Mecklenburg County Superior Court Clerk, special proceedings office confirmed that there was a foreclosure sale scheduled for the property at 6007 Twin Brook Dr for a lien held by OakBrooke Property Owner's Association. The clerk also confirmed that Margaret Chase of Rossabi, Black & Slaughter, PA was attorney of record on the file.

25. On or about December 2, 2013, Plaintiff called the number for Rossabi, Black & Slaughter and asked to speak to Ms. Chase. Ms. Foh was placed on a brief hold while waiting for Ms. Chase to become available and during the hold a recorded message played which stated that Rossabi, Black & Slaughter is a "debt collector" and advised that any information obtained may be used for that purpose. A staff member at Rossabi, Black & Slaughter by the name of Areesa Baker stated that Ms. Chase would return Plaintiff's call and Plaintiff's contact phone number was provided. Plaintiff also asked that any available case documentation be provided to Plaintiff via email at

9

munjebfoh@gmail.com.  *Please See emailed documents sent by Areesa Baker of Rossabi Black Slaughter attached as "Exhibit H."*

26. Article IV Section 1, 2 and 5 of Defendant Oakbrooke's "Declaration of Covenants, Conditions and Restrictions for Oakbrooke Subdivision" states that "each Owner of any Home Site …is deemed to covenant and agree to pay to the Association: (1) annual assessments or charges and (2) special assessments for capital improvements, repairs and maintenance and other purposes."  According to Oakbrooke the purpose of these assessments include; ensuring the use and enjoyment of "the common areas, common open space, common area access easements and landscape and easement areas…" and "the cost of repair, replacement and additions, thereto…" The maximum amount of annual assessments was limited to $150 in until January 1, 2004 and could be raised by the board thereafter.  Section 5 of Article IV provides that "[a]nnual assessments shall be collected annually or semi-annually…or more frequently by separate agreement with the owner."  *Please refer to "Exhibit A."*

27. All of the correspondence from Defendants Rossabi, Black Slaughter and Margaret Chase which were emailed to Plaintiff by Ms. Areesa Baker on May 2, 2013 contained the language "[y]ou are notified as follows in accordance with the Fair Debt Collection Practices Act (15 U.S.C. 1692): This law firm is a debt collector.  This letter is an attempt to collect a debt and any information obtained will be used for that purpose."  *Please refer to "Exhibit H."*

28. On or about December 2, 2013, Ms. Chase returned Plaintiff's call and asked Plaintiff how she wished to handle this matter. Plaintiff stated that she had received no formal notice of this lawsuit and that she had purchased the property at 6007 Twin Brook Dr.

Charlotte, NC 28269 in June 2005 when there was no homeowner's association and that she had informed the homeowner's association that she was not subject to its assessments. Ms. Chase insisted that she had sent proper notice to Plaintiff and stated that the homeowner's association had been around since 2002 but that the association was only trying to collect fees from 2009 and forward because that was when the new board was elected. Ms. Chase asked Plaintiff how much she felt she owed, and Plaintiff replied nothing. Plaintiff informed Ms. Chase that she was in the process of hiring an attorney and that she would consider settlement of the case for litigation costs.

29. On or about December 4, 2013, Plaintiff hired Roger McCalman of the Mosely Law Firm, to file a motion to set aside the lien aside based on lack of service and dispute of the underlying fees.

30. Oakbrooke brought a foreclosure action against Plaintiff's property at 6007 Twin Brook pursuant to N.C. Gen. Stat. § 47F-3-116(b) (2013), which states that "the association must make reasonable and diligent efforts to ensure that its records contain the lot owner's current mailing address." Mario French, Vice President of Oakbrooke Property Owner's Association had both Plaintiff's telephone number and the number of Plaintiff's property management association. Mr. French called Plaintiff several times between March 2012 when Plaintiff rented the property at 6007 Twin Brook and May 2013 when Oakbrooke instituted this action, and Plaintiff was responsive to each of his calls. Additionally, Plaintiff provided Mr. French with the contact information for her property management company who is under a contractual duty to provide Plaintiff with notice regarding the foreclosure. Upon Information and belief, no representative of Oakbrooke ever notified MW Properties of the foreclosure action. *Please Refer to "Exhibit C."*

11

31. At the time of the instant action, Defendants knew that the property at 6007 Twin Brook Dr and 209 N State Street were not Plaintiff's "last known address," "current mailing address" nor Plaintiff's "residence or dwelling house" within the meaning of N.C. Gen. Stat. § 45-21.16 and N.C. Gen. Stat. § 47F-3-116 (b) and (f) (2013).

32. In an effort to convince the Mecklenburg County Superior Courty Clerk that Service by Posting would be sufficient in their foreclosure action, Defendant Oakbrooke executed an "Affidavit of Service, Posting, Military Service, Record Ownership and Efforts of Loss Mitigation," by and through their attorney, Defendant Margaret Chase on August 26, 2013. In item number 12 of her Affivadit, Attorney Chase stated that "[a]s a result of our efforts to communicate with the respondent and resolve the matter…there has been no response from respondent(s) regarding any of the options to resolve the delinquency without foreclosure, and it is upon a good faith belief of Plaintiff that the respondent(s) occupy the residence as their primary residence." *Please See Affidavit of Service, Posting, Military Service, Record Ownership and Efforts of Loss Mitigation attached as "Exhibit I."*

33. The facts of this case are replete with examples that Defendants did not hold a good faith belief that Plaintiff, Munje Foh, occupied 6007 Twin Brook Drive as her primary residence at the time of the filing of their affidavit on August 26, 2013. First, Mr. French witnessed Plaintiff move from her home in March 2012 and was notified by Plaintiff that new tenants had moved in and that the property was being managed by MW Properties. Second, Mr. French had been in contact with Plaintiff via telephone and was aware that Plaintiff was residing in Maryland. Third, Ms. Chase's own efforts in mailing correspondence to Plaintiff's old address in Raleigh, North Carolina evidences the fact

12

that she was aware that Plaintiff no longer resided at 6007 Twin Brook Drive. Therefore, the statements contained in item twelve of Respondent's "Affidavit of Service, Posting, Military Service, Record Ownership and Efforts of Loss Mitigation" were false and misleading to the Court.

34. Mr. McCalman contacted Margaret Chase on or about December 5, 2013, to inform her that he had been retained by Plaintiff and to secure a continuance of the upcoming foreclosure hearing. Upon information and belief, Mr. McCalman provided his contact information to Ms. Chase and to Rossabi Black Slaughter, PA.

35. Despite receiving notice of Plaintiff's representation, Ms. Chase intentionally began mailing communications directly to Ms. Foh.

36. On December 10, 2013, Ms. Chase mailed a copy of her Notice of Postponement of Foreclosure Sale with the intention of communicating directly to Plaintiff and not through her attorney that a foreclosure sale of Plaintiff's property at 6007 Twin Brook Dr. Charlotte, NC 28269, would be conducted on January 13, 2014. The communication stated that "the reason for this postponement is: the Association is attempting to communicate with the owners to satisfy the debt." Ms. Chase mailed this communication to three addresses; the property address at 6007 Twin Brook Dr., Charlotte, NC 28269, Plaintiff's old address at 207 N. State St. Raleigh, NC 27601 and Plaintiff's mailing address at the time; 409 Garrett A Morgan Blvd., Landover, MD 20785. *Please See Margaret Chase's December 10, 2013 communication attached as "Exhibit J."*

37. On January 13, 2014, Ms. Chase mailed another copy of a Notice of Postponement of Foreclosure Sale with the intention of communicating directly to Plaintiff and not through her attorney that a foreclosure sale of Plaintiff's property at 6007 Twin Brook Dr.

13

Charlotte, NC 28269, would be conducted on February 24, 2014. The communication stated that "the reason for this postponement is: the Association is attempting to communicate with the owners to satisfy the debt." Ms. Chase mailed this communication to three addresses; the property address at 6007 Twin Brook Dr., Charlotte, NC 28269, Plaintiff's old address at 207 N. State St. Raleigh, NC 27601 and Plaintiff's mailing address at the time; 409 Garrett A Morgan Blvd., Landover, MD 20785. *Please See Margaret Chase's January 13, 2014 communication attached as "Exhibit K."*

38. Despite her agreement to postpone the foreclosure sale until February 24, 2014, Ms. Chase conducted the foreclosure sale on January 13, 2014 without the knowledge of Plaintiff or her attorney at the time Roger McCalman. *Please See Defendants' Report of Foreclosure attached as "Exhibit L."*

39. Roger McCalman, Plaintiff's attorney at the time, attempted to negotiate a settlement with Defendants. As, February 24, 2014 approached, it became clear to Plaintiff that the parties would not be able to reach an agreement and she asked Mr. McCalman to file the motion to set aside the judgment and lien for association dues and attorneys fees on or about February 4, 2014. Mr. McCalman did not agree that the motion should be filed at that time because it could sour the settlement negotiations between the parties and this caused some tension in the attorney-client relationship.

40. On or about February 17, 2014, Plaintiff asked Mr. McCalman for an update on filing the motion to set aside and the whether or not Defendants had accepted the last settlement offer. Mr. McCalman replied that he had not heard from Ms. Chase.

41. As the next scheduled date of the foreclosure sale, February 24, 2014, drew nearer Plaintiff became concerned about the lack of follow up from Ms. Chase and reached out

14

to her attorney Mr. McCalman via email several times between February 17, 2014 and February 24, 2014 asking for updates and information from Ms. Chase, but he was unable to provide the same citing unresponsiveness from Ms. Chase.

42. On or about February 24, 2014, Ms. Chase sent an email to Mr. McCalman, which he forwarded to Plaintiff in response to her request for a case status update. In that email communication, Ms. Chase stated that she had experienced some technology issues on her firm's server in the past week and some of her emails had been lost. Ms. Chase further explained that her client did not accept Plaintiff's settlement offer and that Plaintiff could resolve the case if she could tender "$2881.43 before the end of the upset bid period [then] the association would dismiss the foreclosure sale" but that "if [Plaintiff] cannot pay within the upset bid period, the association will demand the entire amount owed ($4,787.36) from Ms. Foh in order for the property to be deeded back to her." *Please See Margaret Chase's February 24, 2014 email communication attached as "Exhibit M."*

43. Upon reviewing this communication from Ms. Chase, Plaintiff confronted Mr. McCalman as he had assured her that the foreclosure sale had not proceeded and was no longer pending before the superior court clerk since the parties were working to resolve the case by settlement. Mr. McCalman had also assured Plaintiff that her property had not been transferred in any way, which directly contradicted Ms. Chase's statement that Plaintiff had a ten day upset bid period within which she could pay $2881.43, after which Plaintiff would be required to pay $4,787.36 to have the home "deeded back to her." This confrontation increased the tension in the attorney client relationship between Plaintiff and Mr. McCalman, as Plaintiff felt as though she could not trust Mr. McCalman

to provide full information on the stature of the case and Mr. McCalman felt that Plaintiff was questioning his professionalism without justification. Plaintiff spoke with Mr. McCalman's supervisor in attempt to sort out the confusion. Both Mr. McCalman and his supervisor assured Plaintiff that her property had not been transferred in any way.

44. On February 25, 2014, Ms. Chase mailed a copy of her Report of Foreclosure Sale with the intention of communicating directly to Plaintiff and not through her attorney that a foreclosure sale of Plaintiff's property at 6007 Twin Brook Dr. Charlotte, NC 28269, had taken place on January 13, 2014, with OakBrooke Property Owners Association, Inc. being the highest bidder in the amount of $4,787.36. Ms. Chase mailed this communication to four addresses; the property address at 6007 Twin Brook Dr., Charlotte, NC 28269, Plaintiff's old address at 207 N. State St. Raleigh, NC 27601, Plaintiff's mailing address at the time; 409 Garrett A Morgan Blvd., Landover, MD 20785 and Plaintiff's Attorney's address: Roger A. McCalman, Esq., Mosely Law Firm, PLLC, PO Box 184, Rutherfordton, NC 28139-0184. *Please Refer to "Exhibit L."*

45. The report of foreclosure sale forwarded to Plaintiff and Plaintiff's counsel by Ms. Chase, showed that the foreclosure sale was conducted on January13, 2014, meaning that the ten day upset bid period had concluded even before Ms. Chase sent her January 24, 2014 email communication, proposing that $2881.43 be paid within ten days. *Please Refer to "Exhibits L & M."*

46. Mr. McCalman filed the Motion to Set Aside on February 21, 2014 and the matter was set to be heard on April 2, 2014. *Please See Mr. McCalman's Motion to Set Aside and Hearing Notice attached as "Exhibit N."*

16

47. Plaintiff's receipt of the report of foreclosure sale brought the existing tensions between Plaintiff and Mr. McCalman to a head as Plaintiff believed that Mr. McCalman had not been forthright and diligent in his representation because he made assurances that the foreclosure sale was not proceeding when it actually had. When Plaintiff expressed the same to Mr. McCalman, he communicated his intent to withdraw from the case on March 21, 2014, fourteen days before the scheduled hearing date. Plaintiff advised Mr. McCalman that she would oppose his motion as she would likely not have enough time to secure alternate counsel. *Please See Mr. McCalman's Motion to Withdraw attached as "Exhibit O."*

48. Plaintiff's Counsel, Mr. McCalman was at no time unresponsive to Defendants and in fact had to reach out to Defendants repeatedly with the same questions because they were unresponsive at times. Plaintiff's counsel's name and address where known to Defendants from the outset of his representation and he did not consent to their direct communication with Plaintiff. *Please Refer to "Exhibit N."*

49. Plaintiff searched for a replacement attorney before the upcoming hearing but was unable to secure one at that time. In effort to prevent her property from being transferred further, Plaintiff took time off work and drafted a Temporary Restraining Order seeking an junction that would prevent Defendants from selling the property at 6007 Twin Brook and petitioned the clerk to have the matter set on the same day as the previously set Motion to Set Aside.

50. On April 2, 2014, the parties convened at Mecklenburg Superior Court for a scheduled hearing on the motion to set aside. Mr. McCalman asked to have his motion to withdraw

17

heard first and after questioning Plaintiff as to whether she agreed to the withdrawal the judge denied the motion to withdraw. The judge declined to hear the Motion to Set Aside as he ruled that it was improperly set before him and should have been filed with the Superior Court Clerk.

51. Although the judge did not allow Mr. McCalman's withdrawal, Plaintiff felt that she could no longer trust Mr. McCalman to be forthright with her or to represent her zealously. Aside from telling Plaintiff that her property had not been foreclosed on when it in fact had, Mr. McCalman's threat to withdraw caused Plaintiff a lot of undue stress because she had to search for a new attorney to no avail before the April 2, 2014 hearing, and rush to file a temporary restraining order. Additionally, Mr. McCalman alleged in his written motion that Plaintiff was derogatory towards him, when in fact she had only confronted him regarding his professional performance in the case and had never attacked him personally or used any derogatory, inappropriate or profane language against him. Plaintiff felt that she could not trust an attorney who would intentionally provide untrue bad facts about her character to the court and to opposing counsel.

52. With regard to the temporary restraining order the Judge and clerk inquired as to when Plaintiff filed it and she responded that it had been filed last week after she received the report of foreclosure sale. Mr. Michael Taliercio, who had recently assumed responsibility for the case argued that the motion should not be heard as his firm has not be noticed of the hearing date and that the HOA had no intentions of reselling the property as they were not set up to manage property.

53. After the hearing concluded, Plaintiff walked to the Register of Deeds where she learned that the property at 6007 Twin Brook was still deeded to her and that no lien or judgment had been recorded with the register of deeds office.

## COUNT 1: FDCPA VIOLATION COMMUNICATION IN CONNECTION WITH DEBT COLLECTION

54. Plaintiff incorporates by reference each and every allegation in paragraphs 1 through 53 above.

55. The purpose of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Id. at § 1692(e).Defendants Rossabi, Black, Slaughter PA, Michael Taliercio and Margaret Chase undermined those purposes by intentionally violating several provisions of the Act, including but not limited to 15 U.S.C. § 1692(c)(a)(2) which states that "a debt collector may not communicate with a consumer in connection with the collection of any debt…if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."

Case 1:14-cv-00928-WO-JEP    Document 2    Filed 11/05/14    Page 19 of 26

56. On December 10, 2013, January 13, 2014 and February 25, 2014 defendants Rossabi, Black, Slaughter and Margaret Chase knew that Plaintiff was represented by an attorney who had not consented to direct contact with Plaintiff and they intentionally violated 15 U.S.C. § 1692c (a)(2) by mailing communications directly to Plaintiff on those dates. Their intent to violate the statute is evidenced by the fact that the communications were mailed to Plaintiff's current address at the time 409 Garrett A Morgan Blvd and to Plaintiff's former addresses at 207 N. State St. and the property address at 6007 Twin Brook Dr.

57. Plaintiff's Counsel was at no time unresponsive to Defendants and in fact had to reach out to Defendants repeatedly with the same questions because they were unresponsive at times. Plaintiff's counsel's name and address where known to Defendants from the outset of his representation and he did not consent to their direct communication with Plaintiff. *Please Refer to "Exhibit N."*

58. These communications caused confusion between Plaintiff and her counsel at the time, Roger McCalman, and precipitated his threat to withdraw from the case and ultimate firing.

59. Plaintiff lost the attorney's fee that she paid to Mr. McCalman before he could complete the task for which she hired him and the process of searching for another attorney to represent her and defending her claim pro se caused a lot of emotional distress which manifested in headaches, persistent acne, hair loss and difficulty sleeping.

60. Plaintiff had to hire another attorney very quickly to assume responsibility for her case and had to pay him additional attorney's fees. Plaintiff took some time off of work to search for another attorney.

61. Wherefore, Plaintiff seeks compensatory damages in an amount equal to or in excess of $25,000.00, lost wages, medical expenses, appropriate injunctive and declaratory relief, attorney's fees, costs, statutory damages and other such legal or equitable relief as this honorable court deems necessary and appropriate.


## COUNT 2: FDCPA VIOLATION FALSE OR

## MISLEADING REPRESENTATIONS


62. Plaintiff incorporates by reference each and every allegation in paragraphs 1 through 61 above.

63. Section 15 U.S.C. 1692(e)(1) prohibits use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt" including but not limited to "false representation of the character, amount, or legal status of any debt."

64. Defendants Rossabi, Black, Slaughter, Michael Taliercio and Margaret Chase falsely represented to the North Carolina Superior Court Clerk via affidavit, that Plaintiff resided at 6007 Twin Brook Dr., when they knew that Plaintiff resided in Maryland. Defendants' actions were an intentional effort to convince the court that service by posting was adequate notice to Plaintiff.

65. Defendants Rossabi, Black, Slaughter, Michael Taliercio and Margaret Chase falsely represented "the character, amount, or legal status" of the debt in violation of 15 USC

21

1692(e)(2)(a). Defendants' affidavit shows that Plaintiff was in debt to the association for $2,560.31 which represents nine years of assessments at $150.00 per year plus interest.

66. The North Carolina Court of Appeals has applied a six year statute of limitations to restrictive covenants as contracts under seal and has specifically applied this limitation is cases involving regular assessments charged by homeowners associations. *Allen v. Sea Gate Ass'n Inc.*, 460 SE 2d 197, 200 (N.C. App. 1995).

67. Defendants Rossabi, Black, Slaughter, Michael Taliercio and Margaret Chase were aware that at least part of the debt sought was not legally valid at the time they filed the affidavit with the court however, they intentionally misrepresented the validity and amount of the debt to the court.

68. On or about February 24, 2014, Defendants Rossabi, Black, Slaughter and Margaret Chase intentionally used the false threat that if Plaintiff did not pay $2881.43 before the end of a ten day period that she would have to pay $4,787.36 in order to have her home deeded back to her, knowing that at the time that the threat was made the homeowners association had no intention of transferring the deed to Plaintiff's property to themselves or to a third party.

69. 15 USC 1692(e)(5) prohibits debt collectors from threatening to "take any action that cannot legally be taken or is not intended to be taken."

70. Defendant's threats precipitated the disagreement between Plaintiff and her attorney that caused him to attempt to withdraw and then to be fired.

71. In response to Defendant's threats to transfer the property prior to the hearing of the Motion to Set Aside coupled with her attorney's communication of his intent to withdraw

from the case, Plaintiff took time off of work and drafted a Motion for a Temporary Restraining Order to prevent further transfer of the property.

72. At a superior court hearing on or about April 2, 2014, regarding Plaintiff's Motion to Set Aside and Motion for a Temporary Restraining Order, Defendant Michael Taliercio stated that the homeowners association had neither the intention nor the means to transfer the property.

73. As of the date of the filing of this complaint the property at 6007 Twin Brook Dr. Charlotte, NC 28269 is still deeded to Plaintiff.

74. Wherefore, Plaintiff seeks compensatory damages in an amount equal to or in excess of $25,000.00, lost wages, medical expenses, appropriate injunctive and declaratory relief, attorney's fees, costs, statutory damages and other such legal or equitable relief as this honorable court deems necessary and appropriate.

### COUNT 3: NCDCA VIOLATIONS; USE OF UNCONSCIONABLE MEANS, FRAUDULENT/MISLEADING MISREPRESENTATIONS, AND FAILING TO DISCLOSE THAT COMMUNICATIONS ARE FOR THE PURPOSE OF DEBT COLLECTION

75. Plaintiff incorporates by reference each and every allegation in paragraphs 1 through 74 above.

76. The North Carolina Debt Collection Act protects North Carolina consumers from coercive or otherwise unfair debt collection practices. Unlike the FDCPA, the NCDCA's definition of debt collector has been interpreted to include person's who are collecting debts that they are owed as well as third parties collecting debts on behalf of others.

77. N.C.G.S. § 75-50 states that "[n]o debt collector shall collect or attempt to collect any debt by use of any unconscionable means…including but not limited to…[s]eeking or

23

obtaining any written statement or acknowledgment in any form containing...an

acknowledgment of any debt barred by the statute of limitations..."

78. Defendant Oakbrook Property Owners Association used unconscionable means by

seeking acknowledgement of a debt that it knew was barred by the statute of limitations.

Defendants affidavit shows that Plaintiff was in debt to the association for $2,560.31

which represents nine years of assessments at $150.00 per year plus interest and a myriad

of fees.

79. The North Carolina Court of Appeals has applied a six year statute of limitations to

restrictive covenants as contracts under seal and has specifically applied this limitation is

cases involving regular assessments charged by homeowners associations. *Allen v. Sea

Gate Ass'n Inc.*, 460 SE 2d 197, 200 (N.C. App. 1995).

80. Defendant Oakbrooke Property Owners Association was aware that at least part of the

debt sought was not legally valid at the time they filed the affidavit with the court

however, they intentionally misrepresented the validity and amount of the debt to the

court.

81. N.C. Gen. Stat. § 75-50 states that "no debt collector shall collect or attempt to collect a

debt or obtain information concerning a consumer by any fraudulent, deceptive or

misleading representation.

82. Defendant Oakbrook Property Owners Association fraudulently represented to the court

that Plaintiff still resides at 6007 Twin Brook Dr. Charlotte, NC 28269, when Mario

French, an executive board member of Defendant Oakbrook Property Owners

Association personally observed Plaintiff moving out of the home in March 2012 and has

24

corresponded with Plaintiff several times after March 2012 about the tenants that assumed occupancy of the home after Plaintiff moved.

83. Defendant Oakbrook Property Owners Association intentionally made the false representation that Plaintiff still resides at 6007 Twin Brook Dr. in an effort to convince the court that service by posting was adequate notice to Plaintiff because she resided at the property at 6007 Twin Brook Dr. Completion of this affidavit was necessary for entry of default judgment against Plaintiff for the amount of assessments that Defendants alleged.

84. N.C.Gen.Stat. § 75-50 (2) also prohibits debt collectors from "[f]ailing to disclose in all communications attempting to collect a debt that the purpose of such communication is to collect a debt." Mario French, an executive board member of Oakbrooke Property Owners Association called Plaintiff in summer 2013 and on or about November 29, 2013 regarding collection of alleged homeowners association assessment debt but never informed Plaintiff that the purpose of the communication was to collect a debt.

85. During the November 29, 2013 telephone call Mario French threatened that Plaintiff "could lose her home" as a result of Defendant Oakbrook Property Owners Association's debt collection efforts. At the April 2, 2014 hearing however, Defendant Michael Taliercio made clear that the Association had no intention to transfer ownership of Plaintiff's property to itself or any other party as it had no structure set up for managing properties.

86. Defendant Oakbrooke Property Owners Association's failure to comply with the NCDCA caused proximate injury to Plaintiff including but not limited to entry of judgment against Plaintiff before she had notice or opportunity to respond, expenditure of attorney's fees

and costs in effort to set aside the judgment that was entered before she was aware of the action, time lost from work and emotional distress which manifested in the form of headaches, persistent acne, sleeplessness and hair loss.

87. Wherefore, Plaintiff seeks statutory damages for each NCDCA violation found by the court and compensatory damages in an amount equal to or in excess of $25,000.00 for lost wages, medical expenses, appropriate injunctive and declaratory relief, attorney's fees, costs, statutory damages and other such legal or equitable relief as this honorable court deems necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted this the 1st day of November, 2014.

By: _____

Munje Foh, *Pro Se*.
1545 N. Faulkland Lane Apt 224
Silver Spring, MD 20910
munjebfoh@gmail.com
Tel 704-574-4241

Case 1:14-cv-00928-WO-JEP   Document 2   Filed 11/05/14   Page 26 of 26