MUNJE BETTY FOH,                    )
                                    )
                Plaintiff,          )
                                    )
        v.                          )        1:14CV928
                                    )
MARGARET M. CHASE,                  )
MICHAEL C. TALIERCIO,               )
ROSSABI BLACK SLAUGHTER PA,         )
ATTORNEYS AT LAW, and               )
OAKBROOKE PROPERTY OWNERS           )
ASSOCIATION, INC.,[1]               )
                                    )
                Defendants.         )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff Munje Betty Foh ("Plaintiff") initiated this action alleging violations of the federal Fair Debt Collection Practices Act, codified as amended at 15 U.S.C. § 1692, et seq. ("FDCPA"), and North Carolina statutes prohibiting certain practices by collection agencies, N.C. Gen. Stat. § 58-70-90, et seq. ("NCDCA").

Presently before this court is a Motion to Dismiss filed by Defendants Margaret M. Chase ("Defendant Chase"), Michael C. Taliercio, and the law firm Rossabi Black Slaughter, PA,

---

[1] Oakbrooke Property Owners Association, Inc. ("Oakbrooke POA") was also named as a defendant in this matter. However, Plaintiff and Oakbrooke POA stipulated to the voluntary dismissal of Oakbrooke POA from these proceedings. (Doc. 34.)

Attorneys at Law ("collectively Defendants").  (Doc. 13.)  In their motion, Defendants contend that this court lacks subject matter jurisdiction, or in the alternative, that Plaintiff has failed to state claim.  Plaintiff has responded to the motion (Doc. 22), and Defendants have filed a reply (Doc. 23).[2]

Defendants' motion to dismiss is now ripe for adjudication, and for the reasons stated below, this court will deny Defendants' motion.

## I.  BACKGROUND

Plaintiff asserts violations of the FDCPA and the NCDCA. Defendants assert that this case should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff has not stated a claim upon which relief can be granted and that this case should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because this court does not have subject matter jurisdiction over this matter.  For purposes of adjudicating the 12(b)(6) motion, this court accepts the following allegations made by Plaintiff as

---

[2] In a previous order, this court allowed Plaintiff leave to amend her complaint (Doc. 28), and Plaintiff has filed her Amended Complaint (Doc. 29).  This court then allowed Defendants to supplement their motion to dismiss based on Plaintiff's filing of her Amended Complaint, but Defendants have decided to stand on their brief filed before Plaintiff's Amended Complaint. (See Defs.' Br. in Opp'n to Pl.'s Mot. to Amend (Doc. 27) at 3.)

true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  For purposes of adjudicating the 12(b)(1) motion, this court reviews the following allegations as evidence on the issue but will also look to matters outside of the pleadings when necessary. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

Plaintiff owns residential property at 6007 Twin Brook Dr., Charlotte, NC 28269 (the "Property"). (Amended Complaint ("Am. Compl.") (Doc. 29) ¶ 5.)  Although Plaintiff lived on the Property from 2005 to 2011, she has since relocated several times, moving to Raleigh, North Carolina; then Landover, Maryland; and then Silver Springs, Maryland.  (Id.)  Plaintiff currently rents the Property to tenants.  (Id.)  The Property is situated within the Oakbrooke subdivision, and Oakbrooke POA is a homeowners association that has been organized to serve the subdivision.  (Id. ¶ 9.)  Defendants served as counsel for Oakbrooke POA and regularly engage in debt collection activity on behalf of clients.  (Id. ¶¶ 6-8.)

Plaintiff admits that she did not pay homeowners association dues and fees levied by Oakbrooke POA ("HOA fees"), believing that she was not required to pay such fees because she purchased her home "either prior to [Oakbrooke POA's] existence or prior to the existence of assessment fees."  (See id. ¶¶ 14,

-3-

20.)  In May 2013, Oakbrooke POA's vice president called Plaintiff to inform her that she was delinquent on her HOA fees and that Oakbrooke POA had assigned someone to collect on those fees.  (Id. ¶¶ 16, 20.)  Oakbrooke POA, represented by Defendants, filed a claim of lien against the Property on June 4, 2013, and initiated foreclosure proceedings in Mecklenburg County Superior Court on June 25, 2013, pursuant to N.C. Gen. Stat. § 47F-3-116, which gives homeowners associations the right to file a claim of lien for unpaid assessments and enforce that lien through foreclosure.  (See id. ¶ 30; see also id., Ex. H (Doc. 29-8) at 7-14.)  On August 26, 2013, the Assistant Clerk of Superior Court issued an order of foreclosure (Defs.' Mot. to Dismiss, Ex. A (Doc. 13-1)), and on November 26, 2014, the superior court affirmed the foreclosure on appeal. (Defs.' Reply, Ex. 1 (Doc. 23-1).)

The same official from Oakbrooke POA who had notified Plaintiff of her delinquency called Plaintiff on November 29, 2013 to ensure that Plaintiff knew the Property was in foreclosure.  (Am. Compl. (Doc. 29) ¶ 21.)  Plaintiff claims that this is the first time she had received notice of the foreclosure.  (Id. ¶¶ 21-22.)  On December 2, 2013, Plaintiff called Defendants' office, and during the call, Defendants' phone system played a recording, informing Plaintiff that

-4-

Defendants engage in debt collection.  (Id. ¶¶ 25-28.)
Plaintiff informed Defendant Chase that she would be retaining
counsel during the phone call (id. ¶ 28), and on December 4,
Plaintiff hired attorney Roger McCalman ("Plaintiff's counsel").
(Id. ¶ 29.)  On December 5, Plaintiff's counsel informed
Defendants that he would be representing Plaintiff in the
matter.  (Id. ¶ 34.)

Plaintiff contends there were several irregularities in the
communication between Plaintiff and Defendants.  First,
Plaintiff alleges that some statements made in Oakbrooke POA's
affidavit concerning service, particularly that the Property was
Plaintiff's last known address, were not made in good faith
because Defendants knew Plaintiff had relocated elsewhere.  (Id.
¶¶ 30-33.)  Second, Plaintiff contends that, even though
Defendants were aware that Plaintiff was represented by counsel,
Defendants continued to mail communications directly to
Plaintiff, including the Notice of Postponement of Foreclosure
Sale delivered on December 10, 2013; a subsequent notice mailed
on January 13, 2014; and the report of the foreclosure sale on
February 25, 2014.  (Id. ¶¶ 35-38; Exs. J, K and L.)  Third,
Plaintiff contends Defendants conducted the foreclosure sale on
January 13, 2014, without Plaintiff's knowledge, despite their
assurance on the same day that the foreclosure sale would be

postponed until February 24, 2014, to allow time for further negotiations between Defendants and Plaintiff.  (Id. ¶ 38.) Fourth, Defendants allegedly misled Plaintiff by offering to settle the matter after the upset bid period had already concluded.  (Id. ¶¶ 43, 45.)  Fifth, Plaintiff claims that Defendants misled her into believing that the property would be taken away from her but that Oakbrooke POA never intended to take over title on the Property.  (Id. ¶¶ 52-53.)

## II.  **ANALYSIS**

Plaintiff seeks relief under the FDCPA and the NCDCA, alleging that Defendants violated the statutes in attempting to collect unpaid HOA fees and eventually initiating foreclosure proceedings.  Defendants argue that Plaintiff has not stated a claim due to several legal defects in Plaintiff's pleadings and assert that this court may not adjudicate Plaintiff's claims without improperly reviewing the prior foreclosure order entered in state court.  This court disagrees and finds that Defendants' motion should be denied.

### A.  **Rooker-Feldman Doctrine**

Defendants make the argument that Plaintiff's claim should be barred by the Rooker-Feldman doctrine, because this court cannot review the findings of the state court who ordered foreclosure of Plaintiff's property or take action that would

-6-

render that state court judgment moot or ineffectual. (Br. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") (Doc. 14) at 3-5.)[3] This court agrees that the Rooker-Feldman doctrine prevents Plaintiff from claiming injuries sustained as a result of the foreclosure of her property, but the Rooker-Feldman doctrine does not prevent this court from hearing and determining Plaintiff's claims based on Defendants' alleged violations of the FDCPA and the NCDCA.

The Rooker-Feldman doctrine provides that courts do not have subject matter jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Based on this precedent, the Fourth Circuit has explained that this court must:

> [E]xamine whether the state-court loser who files suit
> in federal district court seeks redress for an injury
> caused by the state-court decision itself. If he is
> not challenging the state-court decision, the Rooker-
> Feldman doctrine does not apply. See, e.g.,
> Washington v. Wilmore, 407 F.3d 274, 280 (4th Cir.
> 2005) (holding, post-Exxon, that the Rooker-Feldman

---

[3] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

> doctrine did not apply because "[the plaintiff's]
> claim of injury rests not on the state court judgment
> itself, but rather on the alleged violation of his
> constitutional rights [by the defendant]"). If, on the
> other hand, he is challenging the state-court
> decision, the Rooker–Feldman doctrine applies.

Davani v. Virginia Dep't of Transp., 434 F.3d 712, 718-19 (4th
Cir. 2006) (footnote omitted).

In this case, Plaintiff, a "state-court loser" because of
the foreclosure of her property, does not claim injury based on
the foreclosure that was ordered by the state court.  Instead,
Plaintiff claims that Defendants violated the FDCPA and NCDCA
through their actions before and during the foreclosure
proceeding and their communications with Plaintiff.  The state
court may have reached the conclusion that Defendants'
communication with Plaintiff provided sufficient notice of the
foreclosure proceeding, but this finding does not strip this
court of jurisdiction to hear arguments that any communication
between the parties was in violation of federal or state debt
collection laws.  See Davani, 434 F.3d at 719.  Even if this
court found that Defendants made a material misrepresentation to
the state court in an attempt to show adequate notice, (see Am.
Compl. (Doc. 29) ¶¶ 64, 82-83), - a decision that would be
somewhat at odds with the state court's finding of adequate
notice - such a finding by this court would relate to

Defendants' conduct, not the judgment of the state court. The same would be true for the issue of whether Defendants misrepresented as to the amount or the validity of certain parts of the debt at issue in the foreclosure proceeding, (see id. ¶¶ 65-68, 78-80), even though the state court determined that the amount claimed by Oakbrooke POA constituted a valid debt. As such, this court can find that Defendants made material misrepresentations to Plaintiff and the state court and find that these misrepresentations violated the FDCPA and the NCDCA without finding that the foreclosure ordered by the state court caused Plaintiff's injuries.[4] Thus, the Rooker-Feldman doctrine

---

[4] The Fourth Circuit, in Davani, points to a helpful illustration from the Second Circuit:

> "Suppose a plaintiff sues his employer in state court for violating . . . anti-discrimination law and . . . loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by Rooker-Feldman, of the state-court judgment."

Davani, 434 F.3d at 719 (quoting Hoblock v. Albany County Bd. of Elections, 422 F.3d 77 (2d Cir. 2005)) (alteration in original).

does not strip this court of jurisdiction to adjudicate these issues.

Defendants rely on two unpublished decisions from the Western and Eastern Districts of North Carolina, Shaw v. Harris and Radisi v. HSBC Bank USA, but this court does not find these cases persuasive on the present facts. (See Defs.' Mem. (Doc. 14) at 4-5 (citing Shaw v. Harris, No. 5:12-CV-804-BR, 2013 WL 5371183 (E.D.N.C. Sept. 24, 2013); Radisi v. HSBC Bank USA, Nat. Ass'n, No. 5:11CV125-RLV, 2012 WL 2155052 (W.D.N.C. June 13, 2012), aff'd sub nom. Radisi v. HSBC Bank USA, N.A., 479 Fed. Appx. 468 (4th Cir. 2012)).) In both cases, the plaintiffs made claims under the FDCPA after their homes were foreclosed, as Plaintiff has done here. However, despite a similar procedural posture, the plaintiffs' claims in the cited cases differ from Plaintiff's claims in at least one significant way: the Shaw and Radisi plaintiffs also made outright challenges of the foreclosure action alongside their FDCPA claims. See Shaw, 2013 WL 5371183, at *3; Radisi, 2012 WL 2155052, at *4. In fact, the plaintiff in Shaw requested that the court provide the plaintiff with a warranty deed for the home that was foreclosed upon, indicating to the court that the plaintiff was "directly challenging the state court decision concerning ownership of the real property at issue." See Shaw, 2013 WL 5371183, at *3.

-10-

Plaintiff, in this case, merely seeks monetary damages that resulted from alleged violations of the FDCPA and the NCDCA. (See Am. Compl. (Doc. 29) ¶¶ 61, 74, 88.) Based on their claims, the Shaw and Radisi plaintiffs complained that the foreclosure caused the alleged injury, whereas Plaintiff, in this case, alleges she was injured by Defendants' actions and their communications with Plaintiff. As a result, this court does not find the cases cited by Defendants persuasive.

Defendants argue that Plaintiff's FDCPA and NCDCA claims are "inextricably intertwined" with the state foreclosure proceeding, making it impossible for this court to hear Plaintiff's claims without reviewing the state court decision. (See Defs.' Mem. (Doc. 14) at 5.) However, the Fourth Circuit has explained:

> Under Exxon . . . , Feldman's "inextricably intertwined" language does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, "inextricably intertwined" with the state-court decision, and is therefore outside of the jurisdiction of the federal district court.

Davani, 434 F.3d at 719. For the reasons set forth above, this court finds that Defendants are incorrect that Plaintiff's

-11-

federal claims are "inextricably intertwined" with the state foreclosure proceeding.

Although this court finds that the Rooker-Feldman doctrine does not prevent Plaintiff from seeking damages based on Defendants' alleged violations of the FDCPA and the NCDCA, (see, e.g., Am. Compl. (Doc. 29) ¶¶ 61, 74, 88), this court notes that some of Plaintiff's allegations have complained of injuries sustained due to the imposition of the state court's judgment in the foreclosure proceeding.  For instance, in her original Complaint, Plaintiff listed the "entry of judgment against Plaintiff before she had notice or opportunity to respond, [and the] expenditure of attorney's fees and costs in [an] effort to set aside the judgment that was entered before she was aware of the action" as injuries she sustained.  (See Complaint ("Compl.") (Doc. 2) ¶ 86.)  This allegation asserts that the judgment entered by the state court caused her injury - an allegation that would be barred by Rooker-Feldman.

Possibly for this reason, Plaintiff removed direct reference to the state court judgment in her Amended Complaint and instead lists "attorney's fees, [and] time lost from work drafting a temporary restraining order in response to Defendant[s'] threat to take possession of her home" as the injuries she sustained based on alleged NCDCA violations.  (See

-12-

Am. Compl. (Doc. 29) ¶ 87.)  This revised allegation asserts that Defendants' violation of the statute - not the valid state court judgment - caused the injury.  Therefore, this claim can and will be heard and determined here.  Defendants have not cited specific allegations that are barred by the Rooker-Feldman doctrine, and this court has not found any in its own review of the pleadings.  Of course, Defendants may raise this argument again if Plaintiff attempts to use injuries sustained as a result of the foreclosure as a basis for relief in this action.

However, because Plaintiff's Amended Complaint does not ask this court to review the propriety of the foreclosure or award damages based on the entry of that foreclosure, this court has jurisdiction to hear Plaintiff's claims.

### B.  **Preclusion**

Although this court has found that the Rooker-Feldman doctrine does not strip this court of jurisdiction, this court must determine whether the preclusion doctrine requires that this court dismiss Plaintiff's Amended Complaint for failure to state a claim.  This court finds it does not have sufficient facts before it to determine whether Plaintiff's claims are precluded by the earlier state court judgment.

Preclusion is an affirmative defense.  See Fed. R. Civ. P. 8(c) (listing res judicata as an affirmative defense); Rodgers

-13-

Builders, Inc. v. McQueen, 76 N.C. App. 16, 30, 331 S.E.2d 726, 735 (1985) ("The defense of res judicata . . . ."). As such, it "is not a jurisdictional matter." Exxon Mobil, 544 U.S. at 293. However, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires that courts "give the same preclusive effect to a state-court judgment as another court of that State would give." Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523 (1986). Under North Carolina law, "[t]he companion doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) have been developed by the courts for the dual purposes of protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation." Strates Shows, Inc. v. Amusements of Am., Inc., 184 N.C. App. 455, 460, 646 S.E.2d 418, 423 (2007).

For a party to be precluded from stating a claim based on the doctrine of res judicata, courts must find: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." Hogan v. Cone Mills Corp., 315 N.C. 127, 135, 337 S.E.2d 477, 482 (1985) (internal quotation marks omitted). The doctrine of res judicata "bars every ground of recovery or defense which was

-14-

actually presented or which could have been presented in the previous action." Williams v. Peabody, 217 N.C. App. 1, 7, 719 S.E.2d 88, 93 (2011) (internal quotation marks omitted).

In this case, this court finds that there is not sufficient identity between the cause of action in the state foreclosure proceeding and the causes of action under the federal and state debt collection statutes to preclude Plaintiff's claims in this action. The parties have not litigated Plaintiff's allegations of FDCPA and NCDCA violations, nor could they have litigated these issues in the foreclosure proceeding because Defendants were representing Oakbrooke POA and were not a party to the litigation. Furthermore, this court does not have a factual record before it at this stage of the proceeding to consider such an affirmative defense. Therefore, this court finds that Plaintiff's claims should not be dismissed based on Defendants' arguments concerning res judicata.

For a party to be precluded from raising an issue in subsequent litigation based on collateral estoppel, courts must also find "identity" between the issues, meaning:

> (1) the issues must be the same as those involved in the prior action, (2) the issues must have been raised and actually litigated in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must

-15-

have been necessary and essential to the resulting judgment.

State v. Summers, 351 N.C. 620, 623, 528 S.E.2d 17, 20 (2000). "A very close examination of matters actually litigated must be made in order to determine if the underlying issues are in fact identical; if they are not identical, then the doctrine of collateral estoppel does not apply." Williams v. Peabody, 217 N.C. App. 1, 6, 719 S.E.2d 88, 93 (2011) (internal quotations and alterations omitted).

In this case, it does not appear from the face of Plaintiff's Amended Complaint that the state court considered whether Defendants violated federal and state debt collection statutes in their communication with Plaintiff as it considered whether to order foreclosure. Under North Carolina law, before issuing an order allowing a foreclosure to proceed, the clerk of court must examine the proffered evidence and find the existence of, in relevant part: (1) a valid debt; (2) default; (3) the right to foreclosure under the instrument; and (4) notice. See N.C. Gen. Stat. § 45-21.16(d). Under the FDCPA and NCDCA, this court must determine whether the communications between Defendant and Plaintiff violate the statute. The proceedings require different inquiries. As a result, Defendants have not

-16-

shown sufficient "identity" of the issues presented in each proceeding to establish collateral estoppel.

Again, to the extent Plaintiff seeks to re-litigate an issue, such as whether notice was proper and sufficient, (see Am. Compl. (Doc. 29) ¶ 33 (challenging several statements made in Defendants' "Affidavit of Service, Posting, Military Service, Record Ownership and Efforts of Loss Mitigation" as not made in good faith)), this court does not, at this point, have a sufficient factual record before it to consider such an affirmative defense. Therefore, this court finds that Plaintiff's claims should not be dismissed based on collateral estoppel.

### C. **Statute of Limitations**

Defendants argue that Plaintiff's claims under the FDCPA are barred by the one-year statute of limitations set out in 15 U.S.C. § 1692k. (See Defs.' Mem. (Doc. 14) at 7.) Plaintiff's initial complaint was filed on November 5, 2014, and Plaintiff has made allegations under the FDCPA that fall within the limitations period. (See Am. Compl. (Doc. 29) ¶ 36 (alleging direct communication with Plaintiff on December 10, 2013, despite knowing that Plaintiff was represented by counsel). Therefore, this court finds that Plaintiff has stated a timely claim under the FDCPA.

To the extent Defendants ask this court to identify time-barred bases for Plaintiff's FDCPA claim, this court will not do so at this time.  Defendants claim that the one-year statute of limitations generally begins to run on the date of the alleged violation, even if the plaintiff was unaware of the violation at the time, and cites several courts from within this circuit for that proposition.  Plaintiff claims that this court should adopt a discovery rule, such that the statute of limitations should run from the date Plaintiff learned of or should have learned of the violation.  Neither party has cited binding precedent on this point, nor has this court found binding precedent in its own research.  This court finds it inappropriate to decide such a matter at this stage of the proceeding.  As such, this court will not dismiss Plaintiff's FDCPA claim based on statute-of-limitation grounds.

### D.   **Notice Requirements under Foreclosure Procedures**

Defendants argue that Plaintiff has not stated a claim under the FDCPA by alleging that Defendants contacted Plaintiff directly in violation of 15 U.S.C. § 1692c(a)(2), because under state law Defendants were required to serve the record owner of the property with notice of the foreclosure proceeding.  (See Defs.' Mem. (Doc. 14) at 8 (citing N.C. Gen. Stat. §§ 45-21.16; 45-21.17; 45-21.21).)

-18-

As support for this proposition, Defendants cite <u>Vitullo v.</u>
<u>Mancini</u>, a case from the Eastern District of Virginia where the
court dismissed the FDCPA allegations against a debt collector
because the plaintiff had not complied with state law in
notifying relevant parties of where they should send
notifications concerning acceleration and foreclosure.  <u>See</u>
<u>Vitullo v. Mancini</u>, 684 F. Supp. 2d 747, 759 (E.D. Va. 2010).
Because the plaintiff had not complied with state law, the
<u>Vitullo</u> court found that the defendants had correctly followed
state law requirements in contacting the plaintiff directly, and
the plaintiff's complaint was insufficient because it did not
address this issue.  <u>See id.</u>  This court finds this case is not
persuasive for two reasons.

First, at least one court has rejected this view and found
that the language of 15 U.S.C. § 1692c(a)(2), allowing direct
communication with a represented party based on "express
permission of a court of competent jurisdiction," does not
excuse a debt collector who is using state notification
requirements as a defense.  <u>See</u> <u>McDermott v. Marcus, Errico,</u>
<u>Emmer & Brooks, P.C.</u>, 911 F. Supp. 2d 1, 83-84 (D. Mass. 2012),
<u>amended in part</u>, 969 F. Supp. 2d 74 (D. Mass. 2013), <u>aff'd in</u>
<u>part, rev'd in part and remanded</u>, 775 F.3d 109 (1st Cir. 2014).
Moreover, the Fourth Circuit has confirmed that "actions

-19-

surrounding [a] foreclosure proceeding [are] attempts to collect [a] debt" within the meaning of the FDCPA, see Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376 (4th Cir. 2006), indicating that the notice requirements accompanying the foreclosure proceedings in this case could serve as the basis for Plaintiff's FDCPA claim.  This court is unsure how it would ultimately resolve this issue but finds that it cannot and should not rule on such a contested issue at the motion-to-dismiss stage.

Second, this case is factually distinguishable from Vitullo. Defendants do not argue that Plaintiff failed to comply with state law as the plaintiff did in Vitullo or that her pleading is insufficient as a result of some failure to comply with state law on Plaintiff's part.  Instead, Defendants merely point to the notice requirements under North Carolina law to excuse their communication with Plaintiff.  This court finds that, unlike Vitullo, there is no clear defect in Plaintiff's allegations under 15 U.S.C. § 1692c(a)(2). It may be that Defendants' conduct is excused by the state notice requirements, but because of the limited scope of the record at this stage, this court will not reach that conclusion at this time.

## III.  CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion to Dismiss filed by Defendants Margaret M. Chase, Michael C. Taliercio, and Rossabi Black Slaughter, PA, Attorneys at Law (Doc. 13) is **DENIED.**

Defendants shall file their Answer or otherwise respond within 14 days of the issuance of this Memorandum Opinion and Order pursuant to Federal Rule of Civil Procedure 12(a)(4)(A).

This the 9th day of September, 2015.

_____
United States District Judge

-21-